# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROVANCO PIPING SYSTEMS, INC., | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 15 C 6624<br>) |
| ISOPLUS FERNWARMETECHNIK<br>VERTRIEBSGESELLSCHARFT MBH,<br>et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants Isoplus Fernwärmetechnik Vertriebsgesellscharft Mbh's and Isoplus Fjernvarmetetknik A/S's (collectively referred to as "Isoplus") motion to dismiss. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff Rovanco Piping Systems, Inc. (Rovanco) allegedly is a manufacturer of pre-insulated piping. Isoplus allegedly manufactures a pre-insulated EN253 piping system (Isoplus Piping System). In October 2012, Rovanco and Isoplus entered into an agreement (Agreement) under which Rovanco would act as the

1

distributor for the Isoplus Piping System. Rovanco contends that, under the terms of the Agreement, Rovanco was to be the exclusive distributor of the Isoplus Piping System.

Rovanco claims that pursuant to the Agreement, Rovanco advertised the Isoplus Piping System throughout North America and secured two projects between 2012 and 2014. In January 2013, the City of Guelph in Ontario Canada allegedly announced the Guelph District Energy Strategic Plan (Guelph Plan), which would require district energy projects and piping throughout new developments. The Guelph Plan was allegedly managed and run by Envida Community Energy, Inc. (Envida). Besterd Mechanical (BM) and Dielco Industrial (Dielco) were allegedly contractors working on the Guelph Plan that committed to purchasing the Isoplus Piping System from Rovanco. According to Rovanco, when BM and Dielco were presented with the final contract or contract proposals, they discovered that some other party had already sold the Isoplus Piping System directly to Envida. BM and Dielco allegedly accused Rovanco of going behind their backs and dealing directly with Envida. Subsequently, Isoplus allegedly admitted to Rovanco that it was Isoplus that had sold the Isoplus Piping System directly to Envida. Rovanco includes in its complaint breach of contract claims (Count I), unjust enrichment claims (Count II), and tortious interference with prospective economic advantage (TIPEA) claims

2

(Count III). Isoplus now moves to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

I. Breach of Contract Claims (Count I)

Isoplus contends that Rovanco has not alleged sufficient facts to state a valid breach of contract claim. Under Illinois law, the elements of a breach of contract claim are: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012); *see also Hess v. Bresney*, 784 F.3d 1154, 1158-59 (7th Cir. 2015)(stating that "[u]nder Illinois law, a breach of contract claim has four elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff")(internal quotations omitted)(quoting *Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)). Under Illinois law, when interpreting the terms of a contract "[a] court will first look to the language of the contract itself to determine the parties' intent." *Thompson v. Gordon*, 948 N.E.2d 39, 46-47 (Ill. 2011)(stating that "[a] contract must be construed as a whole, viewing each provision

in light of the other provisions" and "[t]he parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract"). If the terms of the contract are "clear and unambiguous, they must be given their plain, ordinary and popular meaning," but "[i]f the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent." *Id.*

In the instant action, Rovanco has attached a copy of the Agreement to the complaint and therefore it can be considered when ruling on the instant motion. *See* Fed. R. Civ. P. 10(c). Rovanco bases its claim to an exclusive distributorship on the following sentence in the Agreement: "To better serve the North American markets for District Heating products, the companies herewith agree that for that market, *Rovanco will provide the EN 253 products exclusively from Isoplus* that meet the European District Heating standard EN 253, DIN EN 10217-1 or DIN EN 10217-2." (Agr. 1)(emphasis added). Isoplus disagrees with Rovanco's contention that such language provides Rovanco with an exclusive distributorship. Isoplus argues that the phrase "exclusively from Isoplus" refers to the EN 253 products that Rovanco will provide. According to Isoplus, the exclusive language places a limitation upon Rovanco on the type of products it will provide rather than granting Rovanco a right to the exclusive distributorship of the Isoplus products. Such a reading of the

5

Agreement by Isoplus is consistent with the plain meaning of the terms.

Rovanco contends that such an interpretation is confusing and that the language of the Agreement grants Rovanco the exclusive right to distribute the Isoplus Piping System. Rovanco contends that it has pled that Isoplus granted Isoplus an exclusive right, and that Isoplus breached the Agreement. Rovanco argues that Isoplus cannot challenge the accuracy of Rovanco's allegations at the motion to dismiss stage. However, as indicated above, the court can consider the Agreement itself since it is attached to the complaint. In addition, although Rovanco cites cases for the proposition that it is improper for a court to determine the meaning of the contract terms at the motion to dismiss stage if the terms of a contract are ambiguous, there is no such ambiguity in this case. The terms of the Agreement are not ambiguous.

Rovanco also argues that the parties used the word "exclusive" when discussing distribution and that "exclusive means exclusive." (Resp. 5). However, the Agreement does not contain the word "exclusive." If in fact the Agreement had used the term "exclusive," such language would support Rovanco's claim that the word was intended to apply to Rovanco as the exclusive distributor. However, the Agreement actually contains the word "exclusively," which is clearly an adverb referring to Rovanco's conduct. The Agreement clearly specifies that "Rovanco will

provide" certain products to customers and that such products must be "exclusively from Isoplus." (Agr. 1). There is no language within the agreement that precludes Isoplus from directly selling its own product. Nor is there any reasonable interpretation of such language in the Agreement that would grant Rovanco a right to an exclusive distributorship. *See Thompson*, 948 N.E.2d at 46-47 (stating that "if the language of the contract is susceptible to more than one meaning, it is ambiguous"). Rovanco is not an unsophisticated party. If Rovanco had truly intended to enter into an agreement with the exclusive right to distribute the Isoplus Piping System, Rovanco could have ensured that such right was stated in the agreement. Just because Rovanco has alleged in the complaint at the pleadings stage its own interpretation as to the terms of the Agreement, it does not create an ambiguity when the plain reading of the Agreement is contrary to Rovanco's allegations. To strain the interpretation of the terms in the Agreement beyond its plain language to provide Rovanco a right to an exclusive distributorship would be to write into the Agreement a term that does not exist. Therefore, Isoplus' motion to dismiss the breach of contract claims (Count I) is granted.

II. Tortious Interference with Prospective Economic Advantage Claims (Count III)

        Isoplus moves to dismiss the tortious interference with prospective economic

advantage claims. For a TIPEA claim brought under Illinois law, a plaintiff must establish: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001)(internal quotations omitted)(quoting *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996)); *see also Anderson*, 667 N.E.2d at 1299 (indicating that the mere "hope" of a future business is not sufficient); *Huon v. Breaking Media, LLC*, 75 F. Supp. 3d 747, 774 (N.D. Ill. 2014)(stating that a reasonable expectancy requires "more than the mere hope or opportunity of a future business relationship"). The only element that Isoplus disputes is whether Rovanco had a reasonable expectancy of entering into a valid business relationship with BM and Dielco.

Isoplus argues that Rovanco had only a hope of obtaining business with BM and Dielco. Rovanco indicates in the complaint that BM and Dielco had been approved by Envida as contractors on the Guelph Plan. Rovanco also alleges that it had obtained "firm commitments" from both BM and Dielco to supply them with Isoplus Piping. (Compl. Par. 50-53, 65). Such facts plausibly suggest that Rovanco had a reasonable expectancy of a future business relationship with BM and Dielco.

Whether Rovanco truly had a reasonable basis to expect to conduct future business with BM and Dielco and whether Isoplus tortiously interfered with Rovanco's prospective economic advantage involve the assessment of facts and evidence beyond the pleadings, and Isoplus' arguments are thus premature at this motion to dismiss stage. Isoplus also argues that Envida generally dealt with a pipe distributor named Urecon and that it was unlikely to have bought piping through BM and Dielco. Rovanco disputes Isoplus' contention that it was unlikely that Envida would have dealt with BM and Dielco regarding piping. The fact that, as alleged in the complaint, Envida utilized Urecon for piping the first phase of the Guelph Plan does not necessarily mean that BM and Dielco would have been unable to get the piping contract for the second phase.

Rovanco also correctly points out that Isoplus relies on various facts and evidence that are not in the pleadings. For example, Isoplus argues that BM and Dielco "were not even potential bidders" for the piping contract. (Mem. Dis. 5-6) . While Isoplus can make such arguments at the summary judgment stage, Isoplus cannot rely on evidence that is outside the pleadings at this juncture. If Rovanco's allegations are true, namely that after Rovanco had formed a prospective relationship with BM and Dielco, Isoplus covertly went behind Rovanco's back and knowingly engaged in intentional and unjustified conduct that ruined Rovanco's business

9

relationship with BM and Dielco, then Rovanco could succeed on its TIPEA claim. Therefore, Isoplus' motion to dismiss the TIPEA claims (Count III) is denied. At the summary judgment stage, however, Rovanco will need to point to sufficient evidence to support its TIPEA claims.

III. Unjust Enrichment Claims (Count II)

Isoplus moves to dismiss the unjust enrichment claims. Under Illinois law, for an unjust enrichment claim, a plaintiff must establish: "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011)(internal quotations omitted)(quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Isoplus argues that a plaintiff cannot bring a claim for unjust enrichment while also alleging that a contract exists between the parties. However, Rovanco can bring an unjust enrichment claim in the alternative to a breach of contract claim, and having granted the motion to dismiss the breach of contract claim, the unjust enrichment claim operates as equitable alternative relief. Fed. R. Civ. P. 8(d)(2).

Isoplus also contends that since Rovanco did not have any exclusive

10

distribution rights under the express terms of the Agreement and that any enrichment cannot thus be unjust. According to Isoplus, because Isoplus was free to sell its own products directly, any benefit Isoplus may have received from doing so was not unjustly obtained. As indicated above, the express agreement does not provide Rovanco with the exclusive right to distribute the Isoplus Piping System. The court found earlier that there was no agreement as to Rovanco's distributorship exclusivity, but it is possible that there might be evidence outside of the pleadings that would indicate that in equity and fairness Isoplus has unjustly retained a benefit to the detriment of Rovanco. It is thus premature at this juncture to resolve the unjust enrichment claim. Therefore, Isoplus' motion to dismiss the unjust enrichment claims (Count II) is denied. At the summary judgment stage, however, Rovanco will need to point to sufficient evidence to support its unjust enrichment claims.

## CONCLUSION

Based on the foregoing analysis, Isoplus' motion to dismiss the breach of contract claims (Count I) is granted, and motion to dismiss the TIPEA claims (Count III), and unjust enrichment claims (Count II) is denied.

                                                                             _____
                                                                             Samuel Der-Yeghiayan
                                                                             United States District Court Judge

Dated: December 17, 2015

11